# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERIC GOLDEN, Derivatively On Behalf of ADVO, INC., | ) ) ) | No. |
| Plaintiff, | ) ) | DERIVATIVE COMPLAINT |
| vs. | ) ) | |
| S. SCOTT HARDING, JEFFREY E. EPSTEIN, DONALD S. SCHNEIDER, TODD C. BROWN, DAVID DYER, BOBBIE GAUNT, CHARLES M. HERINGTON, KAREN KAPLAN, JOHN J. MAHONEY and HOWARD NEWMAN, | ) ) ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| Defendants. and | ) ) ) | |
| ADVO, INC., a Delaware Corporation, | ) ) ) | Dated: September 19, 2006 |
| Nominal Defendant | ) ) | |

# INTRODUCTION

1.      This is a derivative action brought by a shareholder of ADVO, Inc. ("ADVO" or the "Company") against certain of its officers and directors for breaches of fiduciary duty, abuse of control, mismanagement, and waste, to remedy harm caused to ADVO.

2.      ADVO is a direct mail media company that engages in soliciting and processing printed advertising from retailers, manufacturers, and service companies in the United States and Canada.  The Company offers direct mail marketing products and services, such as shared mail, which provides the addresses of the households receiving the mail packages, and sorts, processes, and transports the advertising material for ultimate delivery primarily through the United States Postal Service ("USPS").  ADVO is headquartered in Windsor, Connecticut.

3.      During the Relevant Period, July 6, 2006 through and including August 30, 2006, Defendants issued materially false and misleading statements regarding the Company's business and financial results which concealed material adverse problems in ADVO's long-term financial health, intrinsic value, and the effectiveness of its internal financial controls.  Defendants concealed this information in order to accomplish a merger which the Company announced it had entered into with Valassis Communications, Inc. ("Valassis"), a leading company in marketing services, to create the largest integrated media services provider in the nation. Valassis was to acquire all of ADVO's outstanding common stock in an all-cash transaction.  As a result of Defendants' concealment of the truth concerning ADVO's financial and business prospects and defective internal controls, the market believed the acquisition would occur, causing ADVO's stock to trade at artificially inflated prices during the Relevant Period, reaching a high of $36.80 per share in August 2006.

4.      On July 6, 2006, the Company and Valassis issued a joint press release entitled "Valassis to Acquire ADVO – Formation of Leading Media Services Company." The press release touted the benefits of the merger to ADVO and its shareholders.

5.      On this news, ADVO's stock increased from $24.26 per share to $35.39 per share on volume of 18.6 million shares.

6.      In fact, to accomplish the merger, ADVO officers, directors and employees concealed material information, including that:

        (a)     ADVO's business had deteriorated and Defendants knew the lost business had no realistic chance of being replaced;

        (b)     ADVO's internal financial controls were woefully inadequate; and

        (c)     ADVO's business was not as nearly successful as the market and Valassis had been led to believe.

7.      Valassis employees and agents were impeded in their efforts to conduct due diligence in connection with the merger, demonstrating Defendants' active concealment of these issues.

8.      On August 30, 2006, Valassis issued a press release entitled, "Valassis Files Action to Rescind its Merger Agreement with ADVO; Court filing alleges misrepresentation and material adverse changes in ADVO's business." The press release stated in part:

> Valassis Communications, Inc. today sued ADVO, Inc. in the Delaware Chancery Court to rescind its $1.3 billion merger agreement with ADVO based on fraud and material adverse changes, alleging that ADVO management materially misrepresented the financial health of the company and failed to reveal internal control deficiencies.
>
> According to the complaint, ADVO intentionally provided Valassis with "materially false financial information" and "withheld material information" at a

time when the operating income was materially off forecast. The complaint also alleges that 8 executives knew of, but did not disclose, significant internal control deficiencies associated with ADVO's enterprise-wide order-to-cash system.

"We believe that taking this action is in the best interest of our shareholders," said Alan F. Schultz, Valassis Chairman, President and CEO. "ADVO left us with no choice. The pertinent information we received was erroneous, projections were grossly inaccurate and we believe we were the victims of fraud."

9.     As a result of Defendants' false statements, ADVO's stock traded at inflated levels during the Relevant Period. However, after the above revelations, the Company's shares were hammered by massive sales, sending them down 22% from their high to $28.59 per share.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332(a)(2), because complete diversity exists between the Plaintiff and each of the Defendants, and the amount in controversy exceeds $75,000. This action is not a collusive one to confer jurisdiction on this Court it would not otherwise have. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

11.     This Court has jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with Connecticut so as to render the exercise of jurisdiction by this court permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the Defendants either resides in or maintains executive offices in this

District, a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to ADVO, occurred in this District, and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

13.    Plaintiff, Eric Golden, is currently, and was at all times during the Relevant Period, a holder of ADVO common stock.    Plaintiff is a resident of New York, New York.

14.    Nominal Defendant, ADVO, is a direct mail media company, which engages in soliciting and processing printed advertising from retailers, manufacturers, and service companies in the United States and Canada.  The Company offers direct mail marketing products and services, such as shared mail, which provides the addresses of the households receiving the mail packages, and sorts, processes, and transports the advertising material for ultimate delivery primarily through the USPS. The Company also offers solo mail services, which includes list procurement, addressing, processing, and distribution of brochures and circulars for an individual customer through USPS.

15.    Defendant, S. Scott Harding ("Harding"), is, and at all relevant times was, the Chief Executive Officer ("CEO") and a Director of ADVO.

16.    Defendant, Jeffrey E. Epstein ("Epstein"), is, and at all relevant times was, Executive Vice President and Chief Financial Officer ("CFO") of ADVO.

17.     Defendant, Donald S. Schneider ("Schneider"), is, and at all relevant times was, an Executive Vice President of ADVO.

18.     Defendant, Todd C. Brown ("Brown"), is, and at all relevant times was, a Director of ADVO and a member of the Audit and Qualified Legal Compliance Committees.

19.     Defendant, David Dyer ("Dyer"), is, and at all relevant times was, a Director of ADVO, a member of Compensation Committee, and Chairman of the Nominating and Corporate Governance Committee.

20.     Defendant, Bobbie Gaunt ("Gaunt"), is, and at all relevant times was, a Director of ADVO, a member of the Nominating and Corporate Governance Committee, and Chairman of the Compensation Committee.

21.     Defendant, Charles M. Herington ("Herington"), is, and at all relevant times was, a Director of ADVO and a member of the Audit and Qualified Legal Compliance Committees.

22.     Defendant, Karen Kaplan ("Kaplan"), is, and at all relevant times was, a Director of ADVO and a member of the Compensation Committee.

23.     Defendant, John J. Mahoney ("Mahoney"), is, and at all relevant times was, a Director of ADVO the "non-Executive Chairman of the Board," of Directors, Chair of the Audit and Qualified Legal Compliance Committees, and a member of the Nominating and Corporate Governance Committee.

24.     Defendant, Howard Newman ("Newman"), is, and at all relevant times was, a Director of ADVO and a member of the Compensation Committee.

25.    Defendants, Harding, Epstein, Schneider, Brown, Dyer, Gaunt, Herington, Kaplan, Mahoney, and Newman, are hereinafter referred to as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

26.    By reason of their positions as officers, directors and/or fiduciaries of ADVO and because of their ability to control the business and corporate affairs of ADVO, the Individual Defendants owed ADVO and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage ADVO in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of ADVO and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

27.    Each director and officer of the Company owes to ADVO and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligation of fair dealing. In addition, as officers and/or directors of a publicly-held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

28.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of ADVO, were able to and did, directly and/or

indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with ADVO, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of ADVO.

29.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of ADVO, and was at all times acting within the course and scope of such agency.

30.    To discharge their duties, the officers and directors of ADVO were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of ADVO were required to, among other things:

(a)    refrain from acting upon material inside corporate information to benefit themselves;

(b)    ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the Securities and Exchange Commission ("SEC") and the investing public;

(c)    conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)    properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)    remain informed as to how ADVO conducted its operations and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)    ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

31.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of ADVO, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the Individual Defendants who were also officers and/or directors of the

Company during the Relevant Period has been ratified by the remaining Individual Defendants, who collectively comprised all of ADVO's Board of Directors ("Board") during the Relevant Period.

32.     The Individual Defendants breached their duties of loyalty and good faith by allowing Defendants to cause, or by themselves causing, the Company to misrepresent its financial results and prospects, and effectiveness of internal controls, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions.

33.     The damages to ADVO as a result of Defendants' conduct include the consequences of the loss of market capitalization, the cost incurred in the litigation with Valassis over the merger, including all the costs of the due diligence and other expenses during the pre-announcement period if the merger is ultimately voided, and increased cost of capital.

34.     In addition, as a result of Defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of several class action lawsuits that allege violations of federal securities laws.  As a result, ADVO has expended, and will continue to expend, significant sums of money.   Such expenditures include, but are not limited to:

(a)     Costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(b)     Costs incurred in investigating and defending ADVO and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

35.    Moreover, these actions have irreparably damaged ADVO's corporate image and goodwill.  For at least the foreseeable future, ADVO will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that ADVO's ability to raise equity capital or debt on favorable terms in the future is now impaired.

**CONSPIRACY, AIDING AND ABETTING,**
**AND CONCERTED ACTION**

36.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

37.    During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did:

(a)    conceal the fact that the Company was improperly misrepresenting its financial results and future prospects, in order to allow Defendants to artificially inflate the price of the Company's shares in anticipation of the merger;

(b)    conceal the fact that the Company's internal financial controls were wholly inadequate;

(c)    maintain the Individual Defendants' executive and directorial positions at ADVO and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and

(d)    deceive the investing public, including shareholders of ADVO, regarding the Individual Defendants' management of ADVO's operations, the Company's financial health and stability, and future business prospects specifically related to the Company's financials that had been misrepresented by Defendants throughout the Relevant Period. In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

38.    The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least July of 2006 and continuing thereafter. During this time the Individual Defendants caused the Company to conceal the true fact that ADVO was misrepresenting its financial results. In addition, Defendants also made other specific, false statements about ADVO's financial performance and future business prospects, as alleged herein.

39.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of ADVO common stock so they could protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

40.    The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results.    Because the actions described herein occurred under the authority of ADVO's Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

41.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.    In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## DEFENDANTS' FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE RELEVANT PERIOD

42.    On July 6, 2006, the Company and Valassis issued a joint press release entitled, "Valassis to Acquire ADVO – Formation of Leading Media Services Company." The press release emphasized the benefits of the merger to shareholders:

> Valassis, a leading company in marketing services, announced today that it has entered into a definitive merger agreement with ADVO, the nation's leading direct mail media company, under which it will acquire all of the outstanding common shares of ADVO stock for $37 per share in cash in a merger.  The fully financed transaction is valued at approximately $1.3 billion (on a diluted basis), including approximately $125 million in existing ADVO debt which Valassis expects to refinance.

This acquisition will create the nation's largest integrated media services provider. The combination will feature the most comprehensive product and customer offering in the industry serving 20,000 advertisers worldwide, including 94 of the top 100 advertisers in the United States. The combined company will be positioned to capture growth across the expanded product and service portfolio, delivering customized, targeted solutions on a national, regional, zip code, sub-zip code and household basis. ADVO's shared mail distribution business penetrates up to 114 million households, or 90% of U.S. homes, adding substantially to Valassis' weekly newspaper distribution of over 60 million households. The combined company will have 7,900 employees with operations in nine countries.

"Together, Valassis and ADVO will be well positioned for growth as a more diversified company with complementary capabilities, product offerings and clients," said Alan F. Schultz, Valassis Chairman, President and CEO. "We will have an unsurpassed ability to deliver value and savings to customers where, when and how they want - and to do so with advanced analytics and targeting capabilities that maximize advertisers' return on investment. This combination is a first in the media services industry and uniquely positions us to capture growth by anticipating the needs of the marketplace and evolving to meet them."

S. Scott Harding, ADVO Chief Executive Officer, added, "Advertisers' needs are becoming increasingly sophisticated and require solutions that are both scalable and customized. Our new company will deliver on these requirements with an unrivaled portfolio of products, leadership across multiple media platforms, proven targeting expertise and unmatched reach. In today's media world, that is an undeniably attractive combination."

Mr. Schultz continued, "We are very pleased to welcome ADVO into the Valassis family. This is an exciting opportunity for employees, clients and shareholders."

43.     The press release also listed some of the benefits to the companies:

● Creation of diversified media services with complementary products, services and clients;

● All cash price of $37 per share (approximately 32 million diluted shares);

● Transaction value is approximately 8.3x fiscal year ended Sept. 30, 2006 pro-forma EBITDA, including an estimated $40 million of cost synergies;

● Expected to be accretive in 2007 on a cash earnings per share (EPS) basis which excludes estimated amortization of intangibles arising from purchase accounting; and

● Combined offering provides advertisers with both unmatched scale and proven products; backed by a strong foundation of world-class targeting and analytics.

44.     On August 2, 2006, the Company issued a press release entitled, "ADVO Reports Third Quarter Results." The Company filed a subsequent Form 8-K with the SEC. The press release stated, in part:

ADVO, Inc. today reported that revenue for its third fiscal quarter ended July 1, 2006 was $386.8 million versus $353.6 million in the prior year quarter, and operating income was $12.7 million versus $22.4 million in the prior year quarter. Diluted E.P.S. was $0.22 versus $0.41 in the prior year quarter. The third fiscal quarter of 2006 contained a planned extra week versus the prior year period due to the Company's 52/53 week fiscal year.

Both this year's third quarter and the prior year's third quarter contained certain non-recurring costs. Included in the third fiscal quarter of 2006 was a charge of $0.03 in E.P.S. related to the previously announced closure of its Memphis production facility, the new newspaper agreement in Southern California, and the outsourcing of its graphics print services. The Company also incurred expenses of approximately $0.05 in E.P.S.

related to its anticipated merger with Valassis. In addition to these non-recurring costs, the Company incurred additional expenses of $0.03 in E.P.S. year-over-year related to the adoption of FAS123(R). The prior year period E.P.S. included a charge of $0.07 per share related to an organizational realignment....

Third quarter fiscal 2006 distribution expense and print and paper expense as a percent of revenue increased 3.2 percentage points and 0.3 percentage points, respectively. All other costs of sales netted no change as a percent of revenue, resulting in a gross margin decrease of 3.5 percentage points of revenue. SG&A for the third quarter increased $4.4 million, or 6.8%, which was a 0.4 percentage point improvement as a percent of revenue. Third quarter fiscal 2006 operating income as a percent of revenue declined 3.1 percentage points versus the prior year period. The Company's margins were negatively impacted by costs associated with the transition to the new order entry system during the quarter, which the Company estimates to be in the range of $0.06-$0.09 in E.P.S.

The Company's shared advertising packages grew 8.9% to 1.1 billion (up 2.7% after adjusting the fiscal calendar to the comparable prior year period). Pieces per package were 8.4, down 0.2%. Total shared advertising piece volumes grew 8.6^ to 9.5 billion (up 3.1% after adjusting the fiscal calendar to the comparable prior year period). Revenue per piece declined 1.9% driven by declines in ShopWise(R) Wrap revenue and lighter grocery circulars. Total zone products (ShopWise(R) Wrap and Missing Child Card) revenue declined $5 million year-over-year after adjusting the fiscal calendar to the comparable prior year period, an improvement versus the$7 million year-over-year decline in the second fiscal quarter.

Scott Harding, ADVO's Chief Executive Officer stated, "We have successfully converted to our new order entry system during the quarter. This is an accomplishment that has been four years in the making. I am proud of the tremendous efforts given by ADVO associates across the organization to overcome the normal challenges associated with the implementation of an enterprise wide system and successfully go live. As we put this system transition behind us, we are confident in

our ability to gain focus and momentum in our core business operations as we close fiscal 2006 and move into fiscal 2007."

Mr. Harding went on to state, "We are working closely with Valassis to develop and, after closing, execute a successful integration of the two companies. This merger will create a diversified company, combining complementary capabilities, product and service offerings and clients. The combined Company will be well positioned for future growth with an expanded product portfolio which can serve the diverse media needs in today's marketplace. We are excited about the opportunities this will bring for employees, shareholders and clients as we crate the nation's largest integrated media solutions provider."

45.    On August 16, 2006, the Company and Valassis issued a joint press release entitled, "Valassis' Proposed Acquisition of ADVO Receives Regulatory Clearance." The press release stated in part:

Valassis, the leading company in marketing services and Connective Media ($^{TM}$), and ADVO, the nation's leading direct mail media company, announced today that the Federal Trade Commission has granted early termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, with respect to the previously announced agreement to acquire ADVO by Valassis. The consummation of the acquisition is subject to approval by ADVO's shareholders and other customary closing conditions.

46.    On August 30, 2006, ADVO's stock closed at $36.80 per share.

47.    However, later in the day on August 30, 2006, after the market had closed, Valassis issued a press release entitled, "Valassis Files Action to Rescind its Merger Agreement with ADVO; Court filings alleges misrepresentation and material adverse changes in ADVO's business." The press release stated, in part:

Valassis Communications, Inc. today sued ADVO, Inc. in the
Delaware Chancery Court to rescind its $1.3 billion merger
agreement with ADVO based on fraud and material adverse
changes, alleging that ADVO management materially
misrepresented the financial health of the company and failed to
reveal internal control deficiencies.

According to the complaint, ADVO intentionally provided
Valassis with "materially false financial information" and
"withheld material information" at a time when the operating
income was materially off forecast. The complaint also alleges
that ADVO executives knew of, but did not disclose, significant
internal control deficiencies associated with ADVO's enterprise-
wide order-to-cash system.

"We believe that taking this action is in the best interest of our
shareholders," said Alan F. Schultz, Valassis Chairman, President
and CEO. "ADVO left us with no choice. The pertinent
information we received was erroneous, projections were grossly
inaccurate and we believe we were the victims of fraud."

48.    On this news, ADVO's stock collapsed to as low as $25.92 per share, before

closing at $28.59 per share on volume of 11.1 million shares, 11 times the average volume.

49.    As a result of Defendants' concealment of the financial, business and internal

control problems at the Company, ADVO's stock traded at inflated levels during the Relevant

Period. However, after the truth surfaced and the merger was jeopardized, the Company's shares

were hammered by massive sales, sending them down 22% from their high.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

50.    Plaintiff brings this action derivatively in the right and for the benefit of ADVO

to redress injuries suffered, and to be suffered, by ADVO as a direct result of the breaches of

fiduciary duty, abuse of control, gross mismanagement, and waste of corporate assets, as well as

the aiding and abetting thereof, by the Individual Defendants. ADVO is named as a Nominal

Defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on

this Court that it would not otherwise have.

51.    Plaintiff will adequately and fairly represent the interests of ADVO in enforcing and prosecuting its rights.

52.    Plaintiff is and was an owner of the stock of ADVO during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

53.    The current Board of ADVO consists of the following eight individuals: Defendants, Harding, Brown, Dyer, Gaunt, Herington, Kaplan, Mahoney and Newman.  Plaintiff has not made any demand on the present Board of ADVO to institute this action because such a demand would be a futile, wasteful and useless act.

54.    As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees and directors, and attendance at management and Board meetings, each of the Defendants knew the adverse non-public information regarding the improper accounting and lack of internal financial controls.

**The Compensation Committee**

55.    The Compensation Committee, at all relevant times, consisted of Defendants, Gaunt, Dyer, Kaplan and Newman.

56.    The responsibilities of the Compensation Committee are to:

- Establish a total compensation philosophy and policy for the Company that fairly rewards performance benefiting the stockholders and which effectively attracts and retains the human resources necessary to successfully lead and manage the Company;

- Review and approve goals and objectives relevant to the compensation for the Chief Executive Officer, evaluating

the Chief Executive Officer's performance in light of those goals and objectives and determining and approving the compensation level of the Chief Executive Officer based upon this evaluation and competitive market data;

- Make recommendations to the board with respect to the compensation, incentive compensation plans and equity-based plans for executives other than the Chief Executive Officer; and

- Participate in management succession planning, particularly with respect to the position of Chief Executive Officer.

57.   The principal professional occupation of Defendant Harding is his employment with ADVO, pursuant to which he received and continues to receive substantial monetary compensations and other benefits.  Accordingly, Defendant Harding lacks independence from Defendants Gaunt, Dyer, Kaplan, and Newman, Defendants who exert influence over Defendant Harding's compensation by virtue of their positions as members of the Compensation Committee.  This lack of independence renders Defendant Harding incapable of impartially considering a demand to commence and vigorously prosecute this action.

**The Audit Committee**

58.   The Audit Committee consists of Defendants, Mahoney, Brown and Herington. The responsibilities of the Audit Committee are to:

- Provide assistance to the Board in fulfilling its responsibility in overseeing the Company's financial statements and financial reporting process, the performance of the Company's system of internal accounting and financial controls, the Company's internal audit function and the annual independent audit of the Company's financial statements;

- Ensure the Company's compliance with legal and regulatory requirements;

- Select and engage the Company's independent auditors and evaluating their qualifications, independence and performance;

- Maintain free and open communication among the committee, the independent auditors, the internal auditors and management of the Company;

- Investigate any matter brought to its attention with full access to all books, records, facilities, and personnel of the Company; and

- Retain outside counsel, auditors, or other advisors as it deems appropriate and determine the compensation and other terms of engagement of such outside counsel, auditors, or other advisors.

The accounting and internal control problems alleged herein go to the heart of the Audit Committee's responsibilities. The failure of the Audit Committee to recognize and address the misconduct leading up to the proposed merger means that the members of the Audit Committee face a substantial likelihood of liability.   Demand upon Defendants, Mahoney, Brown and Herington, is accordingly futile.

### The Qualified Legal Compliance Committee

59.     The Qualified Legal Compliance Committee was set up in accordance with Section 307 of the Sarbanes-Oxley Act of 2002.  The Qualified Legal Compliance Committee consists of Defendants, Mahoney, Brown, and Herington.  Its specific duties include:

- Reviewing any report of a material violation of the securities law or a breach of a fiduciary duty by the Company, its officers, directors, employees, or agents; and

- Determining whether an investigation is necessary or appropriate to address the reports and take appropriate action.

60.     The members of the Qualified Legal Compliance Committee, which are the same as the members of the Audit Committee, face a substantial likelihood of liability as a result of failing to recognize and address the misconduct alleged herein. Accordingly, demand upon them would be futile.

61.     The entire ADVO Board and senior management participated in the wrongs complained of herein. ADVO's directors are not disinterested or independent due to the fact that Defendants, Harding, Brown, Dyer, Gaunt, Herington, Kaplan, Mahoney, and Newman, served on the ADVO Board during the Relevant Period. Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs. Each of the above-referenced Defendants breached the fiduciary duties that they owed to ADVO and its shareholders in that they failed to prevent and correct the improper financials. Thus, the ADVO Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected ADVO to millions of dollars in liability for possible violations of applicable securities laws.

62.     The Individual Defendants that are or were directors of ADVO ("Director Defendants"), as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from ADVO's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are, therefore, not disinterested parties.

63.    In order to bring this suit, all of the directors of ADVO would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

64.    The acts complained of constitute violations of the fiduciary duties owed by ADVO's officers and directors and these acts are incapable of ratification.

65.    Each of the Director Defendants of ADVO authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.

66.    Any suit by the current directors of ADVO to remedy these wrongs would likely expose the Individual Defendants and ADVO to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

67.    ADVO has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for ADVO any part of the damages ADVO suffered and will suffer thereby.

68.    If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies

allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants.   In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions.   This they will not do. Thus, demand is futile.

69.    If ADVO's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of ADVO.   However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the Defendants in this case contain provisions that eliminate coverage for any action brought directly by ADVO against these Defendants, known as, *inter alia*, the "insured versus insured exclusion."   As a result, if these directors were to sue themselves or certain of the officers of ADVO, there would be no directors' and officers' insurance protection and, thus, this is a further reason why they will not bring such a suit.   On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.   If there is no directors' and officers' liability insurance at all, then the current directors will not cause ADVO to sue them, since they will face a large

uninsured liability. Despite the Individual Defendants having knowledge of the claims and causes of action raised by Plaintiff, the current Board has failed and refused to seek to recover for ADVO for any of the wrongdoing alleged by Plaintiff herein.

70.     Plaintiff has not made any demand on shareholders of ADVO to institute this action, since such demand would be a futile and useless act for the following reasons:

(a)     ADVO is a publicly held company with over 31 million shares outstanding, and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or telephone numbers of shareholders; and

(c)     Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT ONE

### (Against All Defendants for Breach of Fiduciary Duty)

71.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72.     The Individual Defendants owed and owe ADVO fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants that are or were officers of ADVO ("Officer Defendants") and the Director Defendants owed and owe ADVO the highest obligation of good faith, fair dealing, loyalty and due care.

73.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

74.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results and vitality of the internal financial controls of the Company.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

75.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, ADVO has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

76.     Plaintiff, on behalf of ADVO, has no adequate remedy at law.

## COUNT TWO

### (Against All Defendants for Abuse of Control)

77.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

78.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence ADVO, for which they are legally responsible.

79.     As a direct and proximate result of the Individual Defendants' abuse of control, ADVO has sustained significant damages.

80.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

81.     Plaintiff, on behalf of ADVO, has no adequate remedy at law.

### COUNT THREE

### (Against All Defendants for Gross Mismanagement)

82.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

83.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of ADVO in a manner consistent with the operations of a publicly-held corporation.

84.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, ADVO has sustained significant damages in excess of millions of dollars.

85.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

86.     Plaintiff, on behalf of ADVO, has no adequate remedy at law.

## COUNT FOUR

### (Against All Defendants for Waste of Corporate Assets)

87.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

88.     As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, Defendants have caused ADVO to waste valuable corporate assets by incurring potentially millions of dollars of legal liability and/or legal costs in the litigation of the enforcement of the merger.

89.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

90.     Plaintiff, on behalf of ADVO, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.      Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, and waste of corporate assets.

B.      Awarding to ADVO restitution from the Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

C.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

D.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 19, 2006

Respectfully submitted,

James E. Miller
Federal Bar I.D. No. CT-21560
Patrick A. Klingman
Federal Bar I.D. No. CT-17813
Karen M. Leser
Federal Bar I.D. No. CT-23587
SHEPHERD FINKELMAN MILLER
  & SHAH, LLC
65 Main Street
Chester, CT 06412
(Tel) (860) 526-1100
(Fax) (860) 526-1120
(Email) jmiller@sfmslaw.com
        pklingman@sfmslaw.com
        kleser@sfmslaw.com

Nadeem Faruqi
Adam Gonnelli
FARUQI & FARUQI, LLP
320 East 39th Street
New York, New York 10016
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

*Attorneys for Plaintiff*

-28-

<u>VERIFICATION</u>

I, Adam Gonnelli, hereby declare as follows:

1.      I am a member of the law firm of Faruqi & Faruqi, LLP, counsel for plaintiff Eric Golden in the foregoing action.  I have read the foregoing complaint and know the contents thereof.  I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2.      I make this Verification because plaintiff is absent from the County of New York where I maintain my office.

Executed this 19st day of September, 2006, at New York, New York.

_____
Adam Gonnelli